After the hearing,’and time taken by the court to advise, Chancellor J ames delivered the decree of the court,
In the consideration of this case, the grounds most ma? terial to be enquired into by the court, are:
1st. Whether the three several notes stated in the evidence to be paid by D. C. to the defendant J. F. and commonly called accommodation notes, were or were not usurious ?
2d. Whether they were usurious within the knowledge of the defendant ?
3d. Whether the usurious consideratic¡n of the notes was not so. blended with the consideration for transferring the stock as to contaminate the whole transaction with usury ?
4th. Whether the transfer of stock, though nominally a sale, is not in the construction of law, a loan for more than the legal interest, and thus within the act of assembly against usury ?
*335 On the first ground, whether tbe accommodation notes were usurious ? It appears from the testimony given by the broker for D. C. tliáí two of the notes, viz; the one drawn by B. C. and endorsed by Dt*. C. 'and the other drawn also by him, and indorsed by M. & R. drew an in» terest of five per cent for 30 days, and 10 per cent, for 60 days forbearance of the principal, which at the end of the year, including brokerage and commissions (which fall upon the borrower) Would double the principal sum advanced ; so as upon one hundred pounds principal, to make it two hundred pounds, instead of one hundred and seven pounds according to the legal interest.
As to the third note given by D. C. to the defendant,Mr. C. states in his evidence expressly that' it w^s giveft for a balance of monies advanced by L.- & B. for the defendant, at 4 per cent a month. But if it was usurious in its commencement, it must be so throughout; Therefore it fully appears to the-court from the evidence, .that the notes in question, all carried an interest greater than the legal interest, and consequently that they were usurious^
2d., ground. — Were those notes usurious within the knowledge of the defendant ? The broker has proved that the note indorsed by Dr. C. was sold by him to the defendant, at a discount of 10 per cent, at 60 days, so that defendant must have known that this note was usurious.
On the note indorsed by M. & IL this witness did not appear to be so clear that defendant knew it was usurioüs ; but it is stated by D. C. in his evidence, that this note was an usurious one, and that he paid it to the defendant.The circumstance of its beihg usurious, must therefore have come to the knowledge of defendant, if not at the time of the sale, yetat-the time of the payment of it,when he had it fully in his power to have stopped short, and to have received no more than the legal interest. As to the remaining note given to the defendant by D. C. it also appears from the testimony of D. C. that L. & B. advanced him money at four per cent, a month on sundry notes, and for a balance due on the same, he gave a note, dated *336 March, 1794 to defendant. That at the negotiation for the sale of the stock, he expressly promised defendant prj0j. t]ie conclusion of the bargain, that the said note should be paid to him, and that the said note was actually paid. As this note was taken by L. & B. for the balance of monies lent on usury, and was so taken in the name of defendant; as it was afterwards stipulated at the negotiation for the stock, that it should be paid, and it really was paid; it is impossible to dráw any other conclusion front all these circumstances; but that it was usurious within the knowledge of the defendant. But further; since the defendant was called upon for á discovery as to his knowledge of the usurious nature of these notes, and as by the proviso^ in the act of assembly against usury, he would have been'permitted to deny upon oath the truth of what the borrower offers to swear, in which case the borrower is not admitted as a witness; ' and since the defendant has not so denied the charge against him on oath, but has demurred to the discovery, there arises upon this ground a strong presumption; both that the notes were usurious, and that they were so within the khowledge of defendant. We proceed to the third ground, whether the consff deration of the notes was not blended with the consideration for transferring the stock, so as to contaminate it with Usury ? This being charged in the bill, the defendant in his answer denies “ that the note's entered into by D. C. Were given partly to secure notes which had been given by the said D. C. to defendant on usurious loans, and partly to secure payment of the purchase money of the said funded stock But it is stated by D. C. in his evidence “ that at the negotiation for the loan of the stock he ex» pressly promised defendant prior to the conclusion of the bargain, that the note given to him self should be paid.” And again, as the evidence of the bi*oker is only as to his belief, whether he advised D. C. to pay off the notes before or after the transfer of the stock, it is the most reasonable to conclude that it was before the transfer, because it was the most likely step to effect the object in view.
*337 But besides, though these notes might have formed no part of the consideration of the bonds, as being either al» rr ' ' V . , ready paid oft, or guaranteed by D. C.; yet they might, and there can hardly be a doubt but that they did form a part of the inducement to transfer the stock : so that the denial of the défendant may in strictness be true, and yet the expectation of receiving payment of the notes have formed part of the consideration for parting with his stock. Under these circumstances, the court is strongly inclined to think that the consideration for transferring the stock was contaminated by the usurious consideration of the notes : They will not, however, found their decree entirely upon this ground»
' It- now remains to inquire into the4th ground, whether the transfer of the stock, though called- a . sale, be not in construction of law, a loan - for more than the legal interest? Upon this* ground complainant has proved the necessitous circumstances of B. C.; that defendant knew his object was to raise money; that the money was raised through the intervention of the defendant, and that it was so raised by a loss of about ST per cent. On the other hand, the defendant produced respectable witnesses to shew, that according to their opinion, this was no loan, but a sale, made in the common course of trade, and that many others purchased stock about the-same time, at nearly the price that D. C. agreed to give.— But in this inquiry we are not bound by the prices which other people agreed to give for stock, when it appears that their necessities were not great as were those of the borrower in this case, and that their object was not to raise money by an immediate sale of the stock at whatever loss, but'to turn such stock to advantage by á remote speculation. This was the case with all thewitnesses, who proved that they sold out stock at the time at 20s. in the pound; and it is to be remarked in passing along, that the case of none of the purchasers is before the court. Taking these positions therefore, that the borrower in the case before us, was in very necessitous circumstances; that his object *338 was to raise money ; that he affected it through the intervention of the defendant, and that at a great loss, we are. warrantcd in determining that there exists a great difference both in equity and at law, between his case and that of another purchaser, who by his easy circumstances, is left free to act. That it exists in equity, we have among others the authority of the case of Twisleton against Griffith, 1st P. Wms. 310, where it is laid down, “ it cannot be said in any case of oppression, that the party oppressed is particeps criminis, and not entitled to the relief prayed, since it is that very hardship that he is obliged to submit to, (it being imposed upon him by others, and not voluntarily acceded to) that constitutes the crime.” Again, it is laid down in the case of Heathcote against Paignon, 2 Bro< Rep. 175, by Lord Thurlow, “ if there be such inadequacy as to shew that the person did not understand the bargain he made, or was so oppressed that he was glad to mate it, knowing it’s inadequacy, it would'shew a command over him which amounts to a fraud.
That the rule laid down holds equally at law, see the case of Moses and M’Farlane, 2 Burr, 1812, where it is :;tated by Lord Mansfield, “ that an action for money had and received, will lie for money paid under undue advantage' taken of another’s situation contrary to laws made for the protection of persons under those circumstances. — . It is therefore established by decisions both in equity and at law, that there is a great difference between the case of a man who makes a purchase on a remote speculation, and not to raise money, ' and one who goaded on by his necessities is willing to submit to any imposition rathef than not to raise money to supply his wants. If this doctrine needs any further confirmation, we refer to the cases of Lowe against Waller. Doug. Rep. 736; Moore against Beattie,-Amb. 371, a case which bears a strong resemblance to the present one ; and the case of Barker against Vansommer, 1st Bro. Chan. Rep. 149. From these cases, it may also-be collected that it makes no difference whether the money to be raised is to be effected by a sale of goods, or of stock, *339 or whether the necessities of the borrower arise from the immediate, oppression of the lender, or from extraneous circumstances : But the case of Davison, executor against Barnard, assignee of Timmings a bankrupt, resembles the present case more strongly than any other which has been-cited. It was decided by Lord Kenyon, and is reported in Espin. Cases at nisiprius, and in 7th Bac. Gwillim’s edit.p. 197. In this case, it is stated that Timmings the bankrupt, having occasion for a sum of money before his bankruptcy, applied to the mortgagee. That the mortgagee said all his money was in the funds, and that to sell out stock at that time would be a considerable loss, stock then standing at 73 per cent, but that if Timmings would take it at 75, he should have the sum he wanted. This was agreed to, and the mortgagee transferred stock at 75 to the amount of 1500/. for, which the bankrupt gave the mortgage in question. The bankrupt lost two and a half per cent, on the sale of the stock.
The executor of the mortgagee could not maintain an ejectment on the mortgage deed, for in fact the deed was void by the statute : and moreover ,no action could be maintained on a contract usurious at common law. Thus far goes this case, as abstracted from the two books above mentioned, and it resembles the principal case in Eve strong points. 1st. That the bankrupt and D, C. were both in neédy circumstances. 2d. That the object of both was to raise money by the sale of the stock. 3d. That this circumstance was known to the lenders in both cases., 4th. That the stock in both was transferred through the intervention of the lenders. And 5th. That there was a loss of two and a half per cent, in the case cited, and of about 3f per cent, in the case before us : so that the cases rim upon all fours in the-four first particulars, and in the 5th, there being a much greater loss in the principal case than in the one cited, it thereby becomes, the more strong against the defendant. It has been urged here that there is a great difference between the situation of England where this case was decided, and of this country ; the first dealing *340 principally in cash,tbe latter on credit; and therefore that a different principle should govern. ■ But in this case the cc,urt <j0 not i00]¡; M the credit on the mortgage, they look to the sale, which the borrower was immediately obliged to make for cash, and the immense loss of 37 per cent, which -he was obliged to sustain.
Besides, it has not been made to appear to the court that there is such a great disparity between cash and credit in this country and Great-Britain as would amount to 34 1-2 per cent. Also it may be fairly retorted, that usury has been one great cause of the existing disparity. ■ .Gan any one seriously believe that if usury had not taken such deep root in this country, that if money lenders, content with moderate gains, had loaned out their monies to prudent and industrious men, and not to the desperate and adventurous, and could money in consequence have been more, easily obtained, we say that had this been the case, can any one seriously believe that there ever would have existed the present disparity between cash and credit in this country ? We apprehend not. While usury therefore produces such mischief, and while moreover it is contrary to law, this court is bound to set their faces against it, wherever, and under whatever form it may appear.— This case of Davison, executor against assignee of Tim-mings, .has been attacked on the ground of its being a nisi p 'rius case. But let it be remembered that the court does hot found its opinion on'thatcase alone ; we have already said that the case of Moore against Beattie is strongly in •point, and we may well resort to the authority of a single, judge, when that judge is found to be the learned and accurate. Lord Kenyon. But since it was decided in this last case, and also in the others- cited, that tho’ goods may be delivered, and stock may be transferred under color of a fair sale, yet if there have been suspicious circumstances such as a great loss and others we have mentioned, the whole is considered as a mere shift to evade the statute of the 12tb of Ann: So in the present case we think ourselves bound to decide that this transfer of stock, though *341 nominally a sale, is notwithstanding in construction oflaw, a loan for more than the legal interest, and consequently within the act of assembly against usury.
Messrs. SMITH, Bacot & Gaillard for complainant,
Messrs. Parker, Ford and Ward for defendant.
■ A question next arises as to the extent of the relief tq be allowed to complainant.
It is a settled principle in this court that he who seeks equity must do equity. If on the one hand defendant had come here to foreclose his mortgage, the court would have compelled him to take no more than the real value of his stock, and the legal interest; so pn the other hand, we will direct that complainant shall be accountable to defendant for the real value of the money lent, with the' legal interest. On mature deliberation, the court are of opinion that all circumstances considered, this case must stand on its own peculiar merits, respecting the relief to be granted on account of the laches of complainant, in not having his mortgage recorded as the law directs. We will therefore only allow the complainant what the borrower D. C. bound himself for at the time of the. loan, over and above the cash price of the indents in market, which, was proved on the trial by Mr. J. S. C. to be seventeen shillings for six per cents. ; nine shillings for three percents. ; and nine shillings and sixpence for deferred stock.
It is therefore orderéd and decreed, that the mortgage stand as a security to defendant, only for the balance which shall on a settlement of the bond appear to be due for the real value of the stock at the market price, when he' loaned to complainant, together with the ■ interest thereon, to the present time; and that it be referred to the master to ascertain the same.